NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEVINSON AXELROD, P.A.,<br><br>      Plaintiff,<br><br>v.<br><br>Edward HEYBURN and THE LAW OFFICES OF EDWARD HARRINGTON HEYBURN, P.C.,<br><br>      Defendants. | Civ. No. 09-5627<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon Defendants' Second Motion to Dismiss [docket # 36]. The Court has decided the motion upon consideration of the parties' briefing papers and without oral argument. For the reasons given below, the motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The following factual allegations are set out in the Amended Complaint and must be accepted as true for purposes of this motion.

Plaintiff is a law firm located in Edison, New Jersey, which has registered the trademark "Levinson Axelrod" with the U.S. Patent and Trademark Office. From October of 1998 to April 15, 2004, Defendant Edward Heyburn worked as an attorney for Plaintiff. Plaintiff terminated Defendant upon learning that Defendant was preparing to leave the firm and was soliciting Plaintiff's clients. Sometime thereafter, Defendant created a website, "www.LevinsonAxelrod.net," which Defendant used to disparage Plaintiff and its attorneys.

1

Plaintiff's own website address is substantially similar—"www.LevinsonAxelrod.*com*."  The criticisms on Defendant's site are a mix of professional critiques and personal insults.  For example, the site accuses the law firm of mishandling big cases and individual attorneys of being poor lawyers, but it also makes personal attacks such as saying that one of the lawyers has no friends and that another lawyer has a fat neck.  The website also discloses that Defendant has started his own law firm, and it touts some of Defendant's accomplishments as a lawyer.  Defendant has also, on at least one occasion, provided legal advice on the website.

Plaintiff filed this case in state court on November 4, 2009, and Defendant removed the case to federal court a day later.  Plaintiff filed an application for a Temporary Restraining Order ("TRO") with its Complaint, and Defendant responded to the Complaint and application with a Motion to Dismiss.  On January 13, 2010, after hearing oral argument on the matter, the Court granted the TRO and denied the motion to dismiss.  The TRO ordered Defendant to cease using the web address "www.LevinsonAxelrod.net."  Defendant complied with the TRO and moved the contents of his website to a new address: "www.LevinsonAxelrodReallySucks.com."  Thereafter, Plaintiff filed an Amended Complaint, withdrawing its unfair competition and breach of loyalty claims.  Plaintiff now alleges claims for cybersquatting, trademark infringement, false designation of origin, trademark dilution, trafficking in counterfeit marks, and fraud.  Defendant responded to the Amended Complaint with a new motion to dismiss.

ANALYSIS

I. <u>Standard of Review</u>

In lieu of filing an answer, a defendant may move to dismiss a Complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  By rule, a "claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a). Therefore, if a Complaint does not "show[] that the pleader is entitled to relief," it "fails to state a claim" and should be dismissed.

In order to show an entitlement to relief, a plaintiff must plead sufficient factual matter to enable a court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As the Third Circuit has noted, this requires the Court to undertake a two-step analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949-50). At step one, the Court sets aside any legal conclusions and "recitals of elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. At step two, the Court accepts the remaining allegations as true and assesses whether or not they support a reasonable inference that the defendant is liable. *Id.* Rather than alleging facts that are "'merely consistent with' a defendant's liability," the Complaint must allege facts that, if true, "give rise to an entitlement to relief." *Id.* at 1949-50 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, an inference of liability is not reasonable—and thus dismissal is required—if the factual allegations in the complaint are more likely explained by lawful behavior than unlawful behavior. *Id.* at 1950.

In performing this analysis, the judge may only assess the plausibility of the plaintiff's legal claims in light of the facts alleged. The judge may not assess the plausibility of the alleged facts themselves. The Court must accept well-pleaded facts as true (*id.*), even if "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

II. <u>Trademark Infringement and Dilution Claims</u>

Plaintiff makes claims for trademark infringement under both 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a), but both claims are proven by the same basic set of elements: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999)). Defendant does not challenge the first two prongs of this test. Instead he argues that the Amended Complaint does not state a claim because it neither alleges facts showing a likelihood of confusion nor facts showing that he used the mark in connection with providing any goods or services.

The Court finds that, accepting the facts in the Amended Complaint as true, Plaintiff has alleged facts showing an entitlement to relief. Defendant's website was originally posted at the address "www.LevinsonAxelrod.net." This use of the Levinson Axelrod name could conceivably cause confusion as to whether the website was affiliated with the Levinson Axelrod firm. Furthermore, the facts in the Complaint raise a plausible inference that Defendant used the name "Levinson Axelrod" in connection with the provision of goods and services. On Defendant's website criticizing Plaintiff and its attorneys, Defendant presented information that he himself is a lawyer and posted links leading to his professional email address. This raises an inference that Defendant is using the website for commercial purposes—to advertise his own legal services. Defendant counters that in actuality he is using the website purely as a means of criticism, without any commercial intent. This is essentially a factual dispute, and on a motion to dismiss, the Court must accept all factual allegations as true and draw those plausible inferences

that favor Plaintiff. Since Plaintiff has alleged facts raising an inference that Defendant used Plaintiff's protected marks in connection with the advertisement of legal services and that such use is likely to cause confusion, it has successfully stated claims under 15 U.S.C. §§ 1114(1) & 1125(a). Accordingly, those claims will not be dismissed.

To prove a case of trademark dilution under 15 U.S.C. § 1125(c), a party must show (1) it is the owner of a mark that is "famous," (2) the defendant is making commercial use of the mark in interstate commerce, (3) the defendant began using the mark after it became famous, and (4) the defendant's use "causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods and services." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000). In his motion, Defendant only challenges the second of these prongs—commercial use in interstate commerce. As the immediately preceding discussion demonstrates, Plaintiff has pled sufficient facts to support a reasonable inference that Defendant made commercial use of the Levinson Axelrod mark. Therefore, the Court will not dismiss Plaintiff's trademark dilution claim either.

The Court also declines to dismiss Plaintiff's state-law trademark claims brought under N.J. Stat. Ann. §§ 56:3-13.20 & 56:3-13.16. Once again, Defendant challenges these counts solely on the grounds that he has not made use of Plaintiff's distinctive mark in connection with the advertisement or sale of any goods or services. Defendant does not suggest that Plaintiff's state law claims should be analyzed any differently than its federal law claims, and in the past, courts have treated the two sets of laws similarly. *See, e.g., 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006). Therefore, Defendant's challenge to Plaintiff's state law claims for trademark infringement and dilution also fails.

III. Cybersquatting Claims

To make out a claim under the Anti-cybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 1125(d)), Plaintiff must prove three elements (1) Plaintiff's mark (i.e., the name of the good/service/company, etc.) is distinctive or famous, (2) Defendant's domain name (i.e., website address) is confusingly similar to Plaintiff's mark, and (3) Defendant chose the domain name with the bad faith intent to profit from its use. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). The statute lists nine non-exhaustive factors for courts to consider in determining whether or not a person has acted in bad faith:

(I)     the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)    the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)   the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)    the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)     the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)    the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)   the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)  the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous

>   marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). Defendant does not appear to challenge the distinctiveness of Plaintiff's mark or the confusing similarity between the web address "www.LevinsonAxelrod.net" and the Levinson Axelrod name. Rather, Defendant argues that he has not used the website address with the bad faith intent to profit.

Accepting Plaintiff's factual allegations at true, the Amended Complaint raises a plausible inference that Defendants acted with bad faith in registering the domain name "www.LevinsonAxelrod.net." It can be plausibly inferred from the facts alleged that Defendants desired to divert consumers from Plaintiff's real website, "LevinsonAxelrod.*com*," to Defendant's website, "LevinsonAxelrod.*net*." As explained above, it is plausible that Defendant desired such diversion in order to promote his own legal services, and it is also plausible that Defendant further desired such diversion in order to tarnish the goodwill associated with the Levinson Axelrod name. This brings Defendant's alleged conduct squarely within the fifth factor outlined above.

Defendant counters that his use of "LevinsonAxelrod.net" has bona fide noncommercial purposes under the fourth factor listed above—namely, criticism of the Levinson Axelrod firm and its attorneys. The facts underlying this case, once developed through the discovery process, may eventually bear Defendant out on this point. However—as explained above—at this stage in the litigation, the Court looks no further than the pleadings and must draw all plausible inferences that favor Plaintiff. Under that standard, Defendant has not shown that Plaintiff's claim for cybersquatting should be dismissed.

IV. <u>The New Jersey Consumer Fraud Act</u>

Defendant also challenges Plaintiff's claim under the New Jersey Consumer Fraud Act, arguing that the Act does not cover attorneys' services. The Appellate Division of the New Jersey Superior Court has addressed this very question and concluded that the Act does not apply to attorneys. *Vort v. Hollander*, 257 N.J. Super. 56, 62-63 (App. Div. 1992). While a federal court hearing state law claims is only bound by the highest court of the state, it will give serious consideration to an opinion of a state intermediate appeals court, and the Appellate Division's reasoning in the *Vort* case is persuasive. Furthermore, Plaintiff does not contest Defendant's argument on this point. Therefore, the Court will dismiss Count Six of the Amended Complaint.

<u>CONCLUSION</u>

For the foregoing reasons, IT IS ORDERED, this 3rd day of May, 2010, that Defendants' Motion to Dismiss [36] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that the Sixth Count of the Amended Complaint is DISMISSED.

*/s/  Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.